IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Tonya Mitchell, et al.,

   Plaintiffs,

  v.

Westerville City School District
Board of Education, et al.,

   Defendants.

Case No. 2:11-cv-1057

Judge Graham

<u>Opinion and Order</u>

  This suit stems from an altercation that occurred on the morning of October 19, 2011 on a school bus headed to Pointview Elementary School in the Westerville City School District. Surveillance video from the bus shows that plaintiff Mikeal Mitchell, who was eight years old at the time, had been disruptive and teased several students that morning. As students were exiting the bus, a female student struck Mikeal with her hand. The bus driver, defendant Deidre Vandewater, radioed for a school administrator to come to the bus, and she stood in the aisle to block Mikeal and the female student from exiting for about ten minutes while the Pointview school principal, defendant Jeanne Roth, arrived and discussed the situation with Vandewater.

  Mikeal's mother, Tonya Mitchell, brings this action on his behalf and on behalf of her daughter Michelle Mitchell, who was seven years old and also on the school bus that morning. After exiting the bus, Mikeal and Michelle both went to the principal's office, where, according to Roth, they refused to comply with her instructions, ran around, knocked items off the shelves, threatened to hit her, and used profanity.

  The complaint asserts a claim under 42 U.S.C. § 1983 for racial discrimination against the Westerville City School District Board of Education, Roth, and Vandewater. The complaint alleges that Mikeal and Michelle, who were suspended from school and expelled for 80 days, were discriminated against on the basis of their African-American race. The complaint also asserts a state law claim for false imprisonment against Vandewater.

This matter is before the court on a motion for judgment on the pleadings, or in the alternative for summary judgment, filed by the Westerville City School District Board of Education, and on motions for summary judgment filed by Roth and Vandewater. For the reasons stated below, summary judgment is granted to each of the defendants.

I.      Background

In the fall of 2011, Mikeal was a third grader at Pointview and his sister Michelle was a second grader. They got on the school bus at 8:29 a.m. on October 19 and sat in the front row, with Mikeal sitting near the window and Michelle next to the aisle. Within a few minutes, Michelle turned sideways and faced the students in the rows directly behind the driver, and Mikeal briefly rose up and faced the rear of the bus. Beginning at 8:35 a.m., Mikeal rose from his seat – either standing up or on his knees on top of the seat – numerous times and looked around and over the back of the seat toward the rear of the bus. There was much commotion and loud voices on the bus. Vandewater states that Mikeal was "taunting several other students" and that she "repeatedly asked him to stop, but he refused to stop that behavior." Vandewater Aff. at ¶ 4.

The bus arrived at Pointview at 8:40 a.m. Because the bus arrived ahead of schedule, Vandewater kept the students on the bus for about 4 minutes before allowing them to get off. Vandewater Aff. at ¶ 5. Vandewater states that Mikeal continued to taunt students during this time period. Id. At 8:44 a.m., Mikeal grabbed the jacket of a student who was lined up to exit the bus. Mikeal and the other student appear to have pushed at one another, and the other student used his/her foot to push against Mikeal. At 8:45 a.m., Mikeal and a different student appear to have argued for about 15 seconds.

Just before 8:46 a.m., a female student, who was lined up to exit the bus, came near the front row seat where Mikeal was located. Mikeal appears to have made a motion with his left arm toward the female student, though it is unclear from the video recording whether he made contact with her. The girl pushed Mikeal back on the seat and struck him with her left hand.

Vandewater instructed Mikeal and the female student to stay on the bus and radioed for a school administrator to come to the bus. Vandewater Aff. at ¶¶ 6, 8. Vandewater instructed Michelle to exit the bus, but she refused to do so and encouraged Mikeal to get off. Id. at ¶ 7. At 8:47 a.m., Vandewater stood at the front of the aisle so as to block Mikeal and the female student, who were both in seats, from exiting the bus. Michelle stood at the top of the stairwell to the bus doors, such that Vandewater was behind her. Michelle continued to refuse to exit the open bus

2

doors in front of her. As Vandewater faced Michelle, Mikeal pushed into Vandewater's back for 15 to 20 seconds. Vandewater again radioed for help.

Roth arrived at 8:49 a.m. Mikeal climbed over several seats and ran to the back of the bus. As Roth stood at the bus doors and spoke to Vandewater, who remained at the front of the aisle, Michelle pushed into Roth and attempted to exit the bus. After Roth told her to wait, Michelle began screaming and tried again to push past Roth. At 8:51 a.m., Roth allowed Michelle to exit.

Roth then stepped up onto the bus and continued her discussion with Vandewater. Mikeal climbed over seats, went up and down the aisle, and spoke loudly while they talked. The female student remained seated in the front row.

At 8:55 a.m., Roth allowed the female student to exit and told her to go to her office. Roth instructed Mikeal to do the same, but he refused initially and told Roth to "Call my mom." After nearly a minute, Mikeal exited the bus.

Roth met with Mikeal and Michelle in her office. According to Roth, "both children refused to listen to [her] and acted very disruptively" in her office. Roth Aff. at ¶ 8. Michelle ran and crawled around the office, while Mikeal sat on top of a chair back. Id. They both knocked items off Roth's shelves and attempted to leave the office. Id. Michelle threatened to hit Roth and said she would "do the opposite" of whatever Roth asked her to do. Id. Roth was able to talk to Tonya Mitchell on the telephone and explained the urgent need for her to come to Pointview, but Roth received no indication from Mitchell that she would come. Id. at ¶ 9.

The situation in the office "deteriorated" and Roth was unable to reach Mitchell again by phone. Roth Aff. at ¶ 9. Roth states that she believed that she was unable to control Mikeal's and Michelle's behavior. Id. at ¶ 10. Roth called for the police because she believed that she needed help controlling and monitoring the children until their mother got them. Id. at ¶ 11. When a Westerville City Police officer arrived at Roth's office, Mikeal and Michelle refused to listen to him, continued to run around and knock items off Roth's shelves and called the officer profane names. Id. at ¶ 12. The officer called for backup assistance and the police later placed the children in handcuffs and transported them out of Roth's office.[1]

Roth suspended Mikeal and Michelle for 10 days and recommended to the superintendent that they be expelled. A letter regarding the possible expulsions was issued to Tonya Mitchell. The letter stated that the grounds for possible expulsion were the following violations of the Code of

---

[1] The complaint named the Westerville Police Division and the individual officers as defendants. The claims against those defendants have been dismissed pursuant to settlement.

Student Conduct: insubordinate and disruptive behavior, use of profanity, assault, violation of bus rules, and violation of school rules. A hearing was held on November 7, 2011 before hearing officer Debbie Meissner. Tonya Mitchell and her children were present and represented by an attorney. Meissner Aff. at ¶ 5. Based on the evidence presented to Meissner, she determined that the children had violated the Code of Conduct by engaging in assault (Mikeal by pushing Vandewater and Michelle by pushing Roth), destroying school property, engaging in disruptive behavior, engaging in insubordinate behavior, using profanity on school property, and, for Mikeal, taunting another student. Id. at ¶¶ 8, 9. Meissner recommended to the superintendent that both children be expelled for 80 days from November 9, 2011 to March 20, 2012, with an opportunity to return to school on January 4, 2012 on the condition that the children abide by the Code of Student Conduct and provide documentation that they had received counseling. Id. at ¶10. The superintendent accepted Meissner's determinations and recommendation. Id. Neither student provided documentation of having received counseling. Id.

## II. Motion for Judgment on the Pleadings

### A. Standard of Review

Westerville City School District Board of Education has moved for judgment on the pleadings under Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957). The standard applied under Rule 12(c) is the same standard applicable to motions to dismiss under Rule 12(b)(6). See Warrior Sports, Inc. v. National Collegiate Athletic Ass'n, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 582 (6th Cir. 2007) (internal citation and quotation marks omitted). However, the court need not accept as true legal conclusions or unwarranted factual inferences. Id. (citing Mixon v. Ohio, 193 F.3d 389, 400 (6th Cir. 1999)).

To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 336 (6th Cir .2007). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim

4

plausible, i.e., more than merely possible." Fritz v. Charter Township of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A "'legal conclusion couched as a factual allegation'" need not be accepted as true, nor are recitations of the elements of a cause of action sufficient. Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

### B. Discussion

The complaint asserts an Equal Protection claim for racial discrimination under § 1983 against the Westerville School District Board of Education. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." LRL Properties v. Portage Metro. Hous. Auth., 55 F.3d 1097, 1111 (6th Cir. 1995). The "threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." Scarbrough v. Morgan Cnty. Bd. of Educ., 470 F.3d 250, 260 (6th Cir. 2006).

In order to establish § 1983 liability against a local board of education, plaintiffs must show that the disparate treatment was result of a policy or custom within the school district. Under Monell v. Dep't of Social Services, 436 U.S. 658 (1978), school boards "cannot be found liable unless the plaintiff can establish that an officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right. . . . . A 'custom' for purposes of Monell liability must 'be so permanent and well-settled as to constitute a custom or usage with the force of law.'" Doe v. Claiborne Cnty., Tenn., 103 F.3d 495, 507 (6th Cir. 1996) (quoting Monell, 436 U.S. at 691).

The Westerville School District argues that the complaint fails to allege the existence of a policy or custom by which African-American students received harsher discipline than did students who were not members of the protected class for the same or similar behavior as engaged in by Mikeal and Michelle. The court disagrees. Even though the complaint does not use the word "custom," it plainly alleges that "Caucasian administrators at Pointview Elementary" had an established practice, as "school disciplinary records will show," of disproportionately punishing African-American students. Am. Compl., ¶ 60. The court finds that the complaint alleges that there was a sufficiently settled practice by Pointview school administrators to discriminate against African-American students in disciplinary matters so as to constitute a custom for purposes of Monell liability. See Ford v. County of Grand Traverse, 535 F.3d 483, 495-96 (6th Cir. 2008) (a municipality

5

may be subject to liability for a practice that is so widespread or longstanding as to constitute the municipality's custom).

Accordingly, the School District's motion for judgment on the pleadings is denied.

### III. Motions for Summary Judgment

#### A. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Longaberger Co. v. Kolt, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also Longaberger, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 702 (6th Cir. 2008) (quoting Anderson, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. Daugherty, 544 F.3d at 702; Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably

find for the plaintiff." Anderson, 477 U.S. at 252; see Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009).

### B.  The School District

To prevail on a claim against a municipality under § 1983 for monetary relief, a plaintiff must show (1) a deprivation of his constitutional or federal rights (2) that occurred pursuant to a custom, usage, or official policy of the municipality. Monell, 436 U.S. at 690-91. The School District argues that plaintiffs have failed to support either part of their claim.

#### 1.  Constitutional Deprivation

The complaint alleges that School District expelled Mikeal and Michelle from school for 80 days because of their race and that students who have engaged in fighting and disruptive behavior, but who are not African-American, have not been expelled for such a length of time. "School officials violate the Equal Protection Clause when they punish a student more severely for his conduct than other students because of the student's race." Heyne v. Metro. Nashville Public Sch., 655 F.3d 556, 570-71 (6th Cir. 2011). "The Equal Protection Clause requires public institutions to 'treat similarly situated individuals in a similar manner.'" Buchanan v. City of Bolivar, 99 F.3d 1352, 1360 (6th Cir. 1996) (quoting Gutzwiller v. Fenik, 860 F.2d 1317, 1328 (6th Cir. 1988)). A plaintiff may establish the equal protection violation through direct or circumstantial evidence that a student's race motivated the school officials' actions. Heyne, 655 F.3d at 571.

The School District has submitted two affidavits in support of its motion for summary judgment. The first affidavit is from Roth, who recommended to the District that Mikeal and Michelle be expelled. Roth states that her decision to suspend the children and recommend expulsion was not based on their race but was based solely on the conduct in which they engaged on the morning of October 19, 2011 in the school bus and Roth's office. Roth Aff. at ¶ 18. Roth recommended expulsion because she believed the children violated the District's Code of Conduct by: engaging and threatening to engage in physical contact with Roth and Vandewater; vandalizing school property; engaging in disruptive behavior; engaging in insubordinate behavior; and using profanity on school property. Id.

The second affidavit is from Debbie Meissner, the hearing officer to whom Roth's recommendation that Mikeal and Michelle be expelled was referred. She states that her determination that the children be expelled for 80 days was not based on the children's race but was based solely on the violations of the Code of Conduct in which she found they had engaged. Meissner Aff. at ¶ 12. Specifically, that conduct was: engaging in assault, destroying school property,

7

engaging in disruptive behavior, engaging in insubordinate behavior, using profanity on school property, and, for Mikeal, taunting another student. Id. at ¶¶ 8, 9.

In response to the motion for summary judgment, plaintiffs have not submitted any evidence to controvert the School District's position that the expulsions of the children were based solely on their conduct and not their race. Rather, plaintiffs' counsel reiterates in argument that plaintiffs believe they received harsher discipline than would have a Caucasian student who engaged in a fight or similarly disruptive behavior. Such a response from the nonmovant is inadequate in the face of a properly-supported motion for summary judgment. "In opposition to a motion for summary judgment, it is plaintiff who possesses the burden of demonstrating that the defendants treated similarly situated individuals in a disparate manner." Buchanan, 99 F.3d at 1360.

In Buchanan, plaintiff alleged that her son, who had thrown rocks on school property at the assistant principal's car, had received unduly harsh discipline because of his race. Defendants moved for summary judgment and submitted the assistant principal's "affidavit that he treated plaintiff's minor son no differently than any other student." Buchanan, 99 F.3d at 1360. In response, plaintiff "did not bring forth any evidence of similarly situated caucasian students who were treated differently than her son. Instead, plaintiff relied on the defendants to introduce such evidence. As a result, plaintiff has failed to satisfy her burden of proof and summary judgment was appropriate." Id.

Much like the plaintiff in Buchanan, plaintiffs here contend that the School District must put forward evidence proving the absence of racially-disparate discipline at Pointview. See Buchanan, 99 F.3d at 1360 ("[P]laintiff's claim fails because plaintiff misunderstands with whom the burden of proof lies in a cause of action alleging a violation of the Equal Protection Clause."). Even so, the School District has in fact put forward affidavit evidence establishing that Mikeal and Michelle were not treated more severely because of their race. Meissner and Roth both state that race was not a factor in the expulsions of Mikeal and Michelle and that they are unaware of any prior situation in which a student of any race at Pointview engaged in the degree and combination of disruptive behaviors that Mikeal and Michelle did on October 19, 2011. Meissner Aff., at ¶ 11; Roth Aff., at ¶ 17.[2] See Buchanan, 99 F.3d at 1360 (granting summary judgment where plaintiff failed to dispute

---

[2] Roth states that she is aware of two situations at Pointview since October 19, 2011 in which a student engaged in "extremely disruptive" behavior, including the use of profanity and physical contact with adults. Roth Aff. at ¶ 17. The students involved in those two situations were a biracial female and Caucasian male, and Roth states that she took the same disciplinary response as she did with Mikeal and Michelle. Id.

defendant's "affidavit stating that there are no caucasian students at Bolivar Junior High School in the same disciplinary circumstances as plaintiff's son.").

Plaintiffs admit that during discovery the School District produced data and incident reports regarding the discipline of its students. Counsel for plaintiffs states that the School District agreed to sort or code the information by race. Though counsel complains that the information nonetheless was incomplete, he has not demonstrated that the School District failed to comply with a discovery request or that he brought the matter before the magistrate judge for relief, nor have plaintiffs sought redress under Rule 56(d) (when facts are unavailable to the nonmovant). In short, plaintiffs have not established that a genuine dispute of fact exists concerning whether the School District discriminated against them on the basis of their race. See Corales v. Bennett, 567 F.3d 554, 569–70 (9th Cir. 2009) (affirming summary judgment against students who claimed that a school official punished them on the basis of their ethnicity because of the absence of evidence in the record suggesting that their ethnicity motivated the school official's actions).

The School District is thus entitled to summary judgment on the § 1983 claim because plaintiffs have not put forward any evidence showing that they suffered a constitutional deprivation.

### 2. Custom

The School District is additionally entitled to summary judgment because plaintiffs cannot demonstrate the existence of a custom or policy of discriminatory discipline. The School District has established that its official policy is one of non-discrimination. See Meissner Aff. at ¶ 13 (reciting the District's bylaw regarding non-discrimination). Despite alleging in the complaint that school disciplinary records would show a custom of discriminatory disciplinary practices, plaintiffs have put forth no evidence of such a custom.

### C. Principal Roth

The complaint also asserts a claim for racial discrimination under § 1983 against Roth in her individual capacity. To prevail on this claim, plaintiffs must show that Roth treated them differently than she did similarly-situated Caucasian students. See Watkins v. New Albany Plain Local Sch., 711 F.Supp.2d 817, 831 (S.D. Ohio 2010); Hussein v. City of Perrysburg, 535 F.Supp.2d 862, 871 (N.D. Ohio 2008).

As with the School District, plaintiffs are unable to overcome Roth's evidence that she did not treat Mikeal and Michelle differently because of their race. Roth states that she suspended the children and recommended their expulsions based solely on their conduct and that, up until that time, she had not been involved in a situation at Pointview in which the conduct of the student was

as "egregious" as the behavior of Mikeal and Michelle. Roth Aff. at ¶ 17. Roth states that after the situation with Mikeal and Michelle, she has had two situations at Pointview in which a student engaged in "extremely disruptive" behavior and that she treated those students the same as she treated Mikeal and Michelle. Id.

Plaintiffs have not submitted any evidence to dispute Roth's affidavit, but they argue that Roth should bear the burden of documenting disciplinary incidents under her watch at Pointview and proving the absence of racially-disparate treatment. This argument is incorrect. See Buchanan, 99 F.3d at 1360 (granting summary judgment where "plaintiff brought forth no evidence to contradict Lawson and Weaver's affidavits stating that race played no role in their decision to arrest and detain Perkins.").

Because plaintiffs have not set forth evidence demonstrating a genuine dispute of fact as to whether Roth disciplined them differently than she did similarly-situated Caucasian students, Roth is entitled to summary judgment.

### D. Bus Driver Vandewater

#### 1. Section 1983

The complaint also asserts a claim for racial discrimination against Vandewater. Vandewater moves for summary judgment on the grounds that she did not take any disciplinary action against Michelle and that she detained Mikeal on her bus because of his conduct and not his race.

The court agrees with the motion for summary judgment on both points. The complaint alleges that Vandewater subjected the children to discriminatory discipline by detaining them on the school bus. The surveillance video makes clear that Vandewater in no way detained Michelle. See also Vandewater Aff. at ¶ 7. Indeed, Vandewater stood behind Michelle, instructed her to exit the bus, and kept the doors open so that she could exit the bus. Id. It was Michelle who refused to get off the bus.

As to Mikeal, Vandewater states that he had taunted other students, disobeyed her instructions to stop taunting, and was involved in an altercation with the female student. Vandewater Aff. at ¶¶ 4-6. She states that her decision to detain Mikeal had nothing to do with his race but arose from her determination that his behavior warranted that she discuss the matter with him as well as await a school administrator's involvement. Id. at ¶¶ 6, 8, 12. Vandewater further states that she has treated disruptive students who were not African-American in precisely the same manner as she treated Mikeal. Id. at ¶ 13.

Plaintiffs respond by arguing, but not submitting evidence, that a "review of bus driver school bus incident reports" shows that Vandewater has a "bad record when it comes to controlling children." But her alleged difficulties in controlling children say nothing of a discriminatory intent or disparate treatment on her part. Plaintiffs have failed to submit any proof that Vandewater treated Mikeal more severely than she treated similarly-situated Caucasian students.[3]

Accordingly, Vandewater is entitled to summary judgment on the § 1983 claim.

### 2. False Imprisonment

The complaint asserts a common law claim for false imprisonment. It alleges that Vandewater unlawfully restrained the physical liberty of Mikeal and Michelle on the school bus. Vandewater argues that she is entitled to summary judgment because she is immune under Ohio's political subdivision tort liability statute, O.R.C. § 2744.03.

False imprisonment occurs when a person confines another intentionally "'without lawful privilege and against his consent within a limited area for any appreciable time, however short.'" Bennett v. Ohio Dept. of Rehab. & Corr., 60 Ohio St.3d 107, 109, 573 N.E.2d 633, 636 (1991) (quoting Feliciano v. Krieger, 50 Ohio St.2d 69, 71, 362 N.E.2d 647, 647 (1977)).

Ohio's political subdivision tort liability statute provides in relevant part:

(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

. . . .

(6) . . . the employee is immune from liability unless one of the following applies:

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. . . . .

O.R.C. § 2744.03(A)(6). A school district is a political subdivision within the meaning of the statute. O.R.C. § 2744.01 (defining political subdivision as "a municipal corporation, township, county,

---

[3] Plaintiffs again complain that the records they have are incomplete, but they have not explained why they did not pursue more complete information through discovery or otherwise seek relief from the court.

school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state."). Courts have thus applied the immunity provision of the statute to school district employees who were administering or enforcing school policy. See, e.g., Rinehart v. W. Local Sch. Dist. Bd. of Educ., 87 Ohio App. 3d 214, 621 N.E.2d 1365 (Ohio Ct. App. 1993) (immunity for teacher's administration of disciplinary policy); Poe v. Hamilton, 56 Ohio App. 3d 137, 565 N.E.2d 887 (Ohio Ct. App. 1990) (immunity for teacher's enforcement of grading policy).

Vandewater is immune under § 2744.03(A)(6) unless she acted manifestly outside the scope of her employment responsibilities, acted with malicious purpose, in bad faith, or in a wanton or reckless manner, or unless another statutory provision expressly imposes liability upon her. Vandewater has established that she acted within the scope of her job responsibilities. Under the Westerville School District's policy concerning discipline:

> Teachers, *school bus drivers*, and other employees of this Board having authority over students may take such action as may be necessary to control the disorderly conduct of students in all situations and in all places where such students are within the jurisdiction of this Board and when such conduct interferes with the educational program of the schools or threatens the health and safety of others.
>
> Discipline on Board vehicles shall be the *responsibility of the driver* on regular bus runs.

Winesette Aff. at ¶ 10 (emphasis added). Plaintiffs do not dispute that Vandewater acted within her job responsibilities, nor do they argue that another statutory provision expressly imposes liability upon her.

As to the malicious purpose exception, Vandewater argues that there is no proof that she acted with malicious purpose, in bad faith, or in a wanton or reckless manner in detaining Mikeal. Vandewater states that she observed Mikeal taunting other students and that Mikeal ignored her instructions to cease his behavior. Vandewater Aff. at ¶¶ 4, 5. Mikeal was further involved in the altercation with a female student. Id. at ¶ 6. Vandewater detained Mikeal so she could discuss his conduct with him and so a school administrator could come and take control of the situation. Id. at ¶¶ 6, 8.

Plaintiffs offer no response to this argument other than to say that Vandewater "overreacted." Plaintiffs concede that Mikeal had engaged in teasing on the bus and had been involved in an altercation, Am. Compl., ¶ 7, but contend – without evidentiary support – that Mikeal was merely defending his sister.

The court finds as a matter of law that Vandewater did not act with malicious purpose, in bad faith, or in a wanton or reckless manner when she detained Mikeal on the bus for about 10 minutes.  "The statutory standard of 'malicious purpose, bad faith, or wanton or reckless manner' is a more rigorous standard of care than is required under a negligence theory of liability." Jones v. Lucas Cty. Sheriff's Med. Dep't., No. L-11-1196, 2012 WL 1075180, at *2 (Ohio Ct. App. March 30, 2012) (citing Poe, 56 Ohio App.3d at 138, 565 N.E.2d at 889).  Malicious conduct "involves an intent, purpose or design to injure." McKinney v. Hartz and Restle Realtors, Inc., 31 Ohio St.3d 244, 246, 510 N.E.2d 386, 388-89 (1987).  "Wanton misconduct is the failure to exercise any care whatsoever." Jones, 2012 WL 1075180, at *2 (citing Browning v. City of Fostoria, No. 13-09-28, 2010 WL 1948354, at *6 (Ohio Ct. App. May 17, 2010)).  "Reckless manner means perversely disregarding a known risk." Id. (citing Poe, 56 Ohio App.3d at 138, 565 N.E.2d at 889).

That Vandewater overreacted, even if true, does not mean that she acted with a malicious purpose, failed to exercise care, or perversely disregarded a known risk.  There is no dispute that Mikeal teased other students, disobeyed Vandewater's instructions to stop taunting, and was involved in an altercation.  Vandewater's decision to keep Mikeal (and the female student) on the bus until the principal arrived was perfectly reasonable.  Plaintiffs have not cited any evidence or case law suggesting that Vandewater acted even recklessly in detaining Mikeal.

The court thus finds that Vandewater is immune under § 2744.03(A)(6) from liability for false imprisonment.

**IV.    Conclusion**

Accordingly, the School District's motion for judgment on the pleadings is denied, but its motion for summary judgment (doc. 66) is granted.  Roth's motion for summary judgment (doc. 67) and Vandewater's motion for summary judgment (doc. 65) are likewise granted.


s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: September 6, 2013